# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 191 | **DATE** | 4/3/2003 |
| **CASE TITLE** | HOLDEN METAL vs. WISMARQ CORP., ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (41-1) to bar testimony is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| ☐ No notices required, advised in open court. | | Document Number |
| ☐ No notices required. | number of notices | |
| ☐ Notices mailed by judge's staff. | APR 0 4 2003 | |
| ☐ Notified counsel by telephone. | date docketed | 49 |
| ✓ Docketing to mail notices. | | |
| ☐ Mail AO 450 form. | docketing deputy initials | |
| ☐ Copy to judge/magistrate judge. | | |
| DW — courtroom deputy's initials | Date/time received in Central Clerk's Office | date mailed notice / mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLDEN METAL & ALUMINUM
WORKS, LTD., d/b/a "HOLDEN
SEAMLESS GUTTERS," a business
organized under the laws of the Republic of
Ireland,

    Plaintiff,

v.

WISMARQ CORPORATION, et al.,

    Defendants.

No. 00 C 0191
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This dispute stems from Holden Metal & Aluminum Works' hiring of Morton International to identify a high quality weather-resistant protective color coating for use on the aluminum sheeting used in its gutters. Morton recommended its "Polyceram 340" two-coat system – consisting of its "Primer 45Y6" and Polyceran340 polyester resin-based top coating. Holden subsequently engaged Wismarq Corporation to provide and apply the protective coating to the coils of its aluminum sheeting. Subsequently, Holden discovered that the coating was chipping and flaking off the gutters made from the aluminum coils. As a result, Holden filed suit against Wismarq and Morton alleging breach of implied warranty, breach of contract, and breach of express warranty.

Wismarq has now moved to bar the testimony of Holden's purported expert, Kenneth Brown. Brown's opinion is that five purported reasons caused the failure of the coating: (1) variations in thickness of the primer and the topcoat; (2) variations in the time and temperature during the cure (drying) process; (3) variations in the peak metal temperature of the aluminum substrate during the process of coating and curing the coated aluminum sheet metal; (4)

49

variations in the amount of pretreatment applied to the substrate; and (5) random and intermittent grease or oil on the aluminum substrate. Defendants claim that Brown's opinion fails to meet the standard for admissibility of scientific or technical expert testimony under Federal Rule of Evidence 702.

Rule 702 demands that expert testimony relate to scientific, technical knowledge, which does not include unsubstantiated speculation and subjective beliefs. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Initially, I must determine whether Brown's testimony is reliable, that is, whether it is based on reliable methodology. *Cummins v. Lyle Industries*, 93 F.3d 362, 368 (7th Cir. 1996). Second, I must decide "whether evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue." *Id.*; *see also Masters v. Hesston Corp.*, 291 F.3d 985, 991 (7th Cir. 2002). The law is clear that an expert must substantiate his opinion and that providing only an ultimate conclusion with no analysis is meaningless. *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999). A liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing and knowledge. *Id.* Indeed, in *Clark*, the court noted:

> In determining whether an expert's testimony is reliable, the *Daubert* factors are applicable in cases where an expert eschews reliance on any rigorous methodology and instead purports to base his opinion on merely "experience" or "training." [citation omitted] "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." [Citing *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)] Either "hands on testing" or "review of experimental, statistical, or other scientific data generated by others in the field" may suffice as a reasonable methodology upon which to base an opinion. [Citation omitted.]

*Id.*

By his own admission, Brown's opinions are based on visual inspection of a lone piece of gutter, numerous testing reports and data, and his own "experience." There are problems with each of these bases. First, Brown visually examined only one piece of failed gutter but performed no scientific testing or analysis on it or any other piece. He never asked to look at a piece of non-failed coil to compare it to the failed coil sample despite the fact that such samples were available. When asked why he did not conduct any analysis of his own, Brown responded that his assignment was to offer an opinion based only on the information samples that were made available to him. Under similar circumstances as above, the Seventh Circuit affirmed a district court's order barring an expert from testifying because "his opinion [was] based solely on his belief and assumption without any scientific testing, data or supporting research material in the record." *Clark*, 192 F.3d at 758. The Court noted that the expert could have conducted testing, like that of the defense experts, but did not, instead offering nothing more than a "bottom line" conclusion that did not assist the trier of fact. *Id.* at 759.

Another problem is that Brown has failed to familiarize himself with existing data and research from prior tests regarding paint failure and to account for conclusions in such reports opposite to his own. After identifying numerous testing reports and data as "Documents and Information Considered" in his Rule 26 disclosures, Brown could not point to one single test conducted by anyone else in support of his theories. In contrast, many of the tests did not involve the coil at issue or that the conclusions reached by those conducting the tests were the opposite of his own. Brown attempts to dismiss these inconsistencies by saying that none of the reports he reviewed in this case were critical to his opinions and that he could have made his conclusions had he not read them. Under similar circumstances, the Seventh Circuit affirmed a district court's order barring an expert from testifying because the proffered expert did not adequately

3

explain why he ignored certain facts and data while accepting others and failed to present any other data that supported his opinion. *Barber v. United Airlines, Inc.*, 17 Fed.Appx. 433, 437 (7th Cir. 2001). Essentially, the expert "cherry-picked" the facts he considered to render his opinion, and such selective use of facts failed to satisfy the scientific method and *Daubert*. *Id.*

Putting aside Brown's other purported bases for his opinion, I am left with his final source – his own "experience." The initial problem with this basis is that although claiming to have some experience in designing tests for paint failure analysis, as well as in interpreting those tests, Brown cannot cite any specifics with regard to the kinds of tests or failure that were involved. This ignorance is inexcusable for a purported expert. In addition to this underwhelming experience in failure analysis, Brown fails to "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Indiana Ins. Co. v. Valmont Electric Inc.*, No. TH97-0009-C-T/F, 2001 WL 1823587 (S.D. Ind. Dec. 27, 2001). Simply put, he fails to adequately explain his reasoning and methodology for arriving at his opinions. In *Indiana Insurance Co.*, the Southern District of Indiana faced a similar situation. In that case, the Court held that the expert's purported testimony – essentially "I have seen a lot of fires and if the capacitor explodes it is always caused by an internal, as opposed to external fire" – was insufficient to satisfy the *Daubert* standards. *Id.* The court explained:

> Given the absences of a stated reasoning or methodology, the court is unable to consider the error rate of the scientific technique, if any used by [the expert] in formulating his opinions. Similarly, the court is unable to determine on the basis of the record before that his theory or methods are consistent with the generally accepted method for gathering and evaluating evidence in the field of electrical engineering as applied to capacitor and ballast fires. Finally, it appears that [the expert's] work suffers from several of the concerns of other circuits, including a lack of accounting for other explanations.

*Id.* at 6.

In summary, Brown's failure to conduct actual tests, to employ any identifiable methodology, and to sufficiently take into account existing data and research are not surprisingly revealed by his inability to state to a reasonable degree of scientific certainty which of his five possible failure theories alone or in combination are the reason for the alleged failure of the coating. Just like the proffered experts in these cases, Brown's testimony is so unreliable that it fails to pass muster under *Daubert* and *Kumho*.

For the aforementioned reasons, Wismarq's Motion to Bar the Testimony of Kenneth R. Brown is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: APR 0 3 2003