Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 191 | DATE | 5/12/2004 |
| CASE TITLE | HOLDEN METAL V. WISMARQ CORP., ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Motion (54-1) for summary judgment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | |
| ☐ No notices required. | number of notices |
| ☐ Notices mailed by judge's staff. | MAY 1 8 2004 date docketed |
| ☐ Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | docketing deputy initials |
| ☐ Mail AO 450 form. | |
| ☐ Copy to judge/magistrate judge. | |
| DW courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 69

HOLDEN METAL & ALUMINUM
WORKS, LTD., d/b/a "HOLDEN
SEAMLESS GUTTERS," a business
organized under the laws of the Republic of
Ireland,

 Plaintiff,

v.

WISMARQ CORPORATION, et al.,

 Defendants.

No. 00 C 0191
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Holden Metal & Aluminum Works, Ltd., d/b/a "Holden Seamless Gutters" ("Holden") filed an amended complaint ("complaint") containing three counts, two of which are directed against Wismarq Corporation ("Wismarq"). Count I of the complaint is a claim for breach of implied warranty of fitness for a particular purpose, and Count II is a claim for breach of contract. Holden's claims relate to the coating of aluminum sheeting used in the manufacture of allegedly defective gutters.

The complaint alleges that Holden hired Morton to identify a high quality weather-resistant protective color coating for use on the aluminum sheeting used in its gutters. Morton recommended its "Polyceran 340" two-coat system – consisting of its "Primer 45Y6" and Polyceran340 polyester resin-based top coating. The complaint alleges further that, thereafter, Holden engaged Wismarq to provide and apply the protective coating to the coils of aluminum sheeting that Holden purchased from Jupiter Aluminum Corporation. It then alleges that during the summer of 1997, Holden began receiving complaints from both its wholesale and retail

69

customers that the coating was chipping and flaking off the gutters made from the aluminum coils coated by Wismarq. Wismarq has denied all material allegations, and now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

Analysis

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Security First Network Bank v. C.A.P.S., Inc.*, No. 01 C 342, 2003 WL 22299011 (N.D. Ill. Oct. 7, 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In response, the non-moving party cannot rest on bare pleadings alone, but must designate specific material facts showing that there is a genuine issue for trial. *Id.*; *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Security First*, 2003 WL 22299011, at *1; *Insolia*, 216 F.3d at 598-99. Summary judgment should be granted if the non-movant has "failed to produce sufficient evidence to establish the existence of an essential element of its case on which it bears the burden of proof" at trial. *Klootwyk v. Daimler Chrysler Corp.*, No. 01 C 6127, 2003 WL 21038417, at *1 (N.D. Ill. May 7, 2003) (citing *Peerman v. Georgia-Pacific Corp.*, 35 F.3d 284, 287 (7th Cir. 1994); quoting *Celotex Corp.*, 477 U.S. at 322-23). Wismarq argues that it is entitled to summary judgment because Holden has failed to establish an essential of its contract and warranty claims, as well as its claim for damages.

Contract and Warranty Claims

To prove a cause of action for the breach of an implied warranty of fitness for a particular purpose, Holden must establish: (1) a sale of goods; (2) that the seller had reason to know of any particular purpose for which the goods are required; (3) that plaintiff, as buyer of the goods, was relying upon seller's skills or judgment to select suitable goods; and (4) that the goods were not fit for the particular purpose for which they were used. *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662 (Ill. App. Ct. 2003). Likewise, to prove liability in a breach of contract action, Holden must prove: (1) the existence of a valid and enforceable contract; (2) performance by plaintiff; (3) breach of contract by defendant; and (4) resultant injury to plaintiff. *Elson v. State Farm & Cas. Co.*, 691 N.E.2d. 807 (Ill. App. Ct. 1998).

Causation is a critical element in contract law. *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280, 1289 (7th Cir. 1986).[1] In a case such as this, the plaintiff's own speculation is insufficient to establish the necessary inference of causation in order to provide a basis for recovery. *Aetna Ins. Co. v. Amelio Bros. Meat Co.*, 538 N.E.2d 707 (Ill. App. Ct. 1989); *Muller v. Synthes Corp.*, No. 99 C 1492, 2002 WL 460827, at *6 (N.D. Ill. Mar. 26, 2002). Because the question of how the paint debonded is beyond the knowledge that an average

---

[1] *See also Bluestein v. Upjohn Co.*, 430 N.E.2d 580, 586 (Ill. App. Ct. 1981) (causation is essential element of breach of warranty theory); *Van Winkle v. Firestone Tire & Rubber Co.*, 253 N.E.2d 588, 590 (Ill. App. Ct. 1969) (offer of blown-out tire into evidence alone with no expert testimony was not sufficient to establish proof of defect in wall of tire which caused it to blow out); *Bethards v. Bard Access Sys., Inc.*, No. 94 C 1522, 1995 WL 75356, at *6 (N.D. Ill. Feb. 22, 1995) (uninjured implantees have no standing to sue due to lack of proof of proximate causation which is essential element of both strict liability and breach of implied warranty); *Harris v. GMC*, 34 Fed. Appx. 487, 490 (7th Cir.), *reh'g den.*, 2002 U.S. App. LEXIS 12553 (7th Cir. 2002) (plaintiff failed to provide evidence that airbag system was defective, or, if so, that defective airbag caused her injuries).

3

layperson could be expected to possess, competent proof on this issue requires expert testimony.

*See, e.g., id.; Alvarez v. Am. Isuzu Motors*, 749 N.E.2d 16, 23-24 (Ill. App. Ct. 2001).

For its expert, Wismarq has produced Dr. Thomas Eager, a metallurgist and professor of materials engineering and engineering systems at MIT, who has opined the following:

> [There] is evidence of ragged slit edges on the material slit by Holden, due to improperly aligned or dull slitter knives. The slit edge produced severe oil canning and wavy edges. Such deformed edges would create erratic feeding velocity in the forming operation, causing scuffing and skidding with resultant paint extension and debonding. In addition, Mr. Holden indicated that the clutch on the slitter had to be replaced. A slipping take-up clutch would produce erratic feeding and subsequent scuffing and skidding. On Sample C, there is surface cracking of the aluminum confirming that there was sufficient pressure to locally deform the metal. Such scuffing, skidding and excessive pressure is sufficient to debond paint that has proper adhesion.
>
> In my opinion, the paint debonding problems experienced by Holden Metals were created by improper slitting of the coils, which caused erratic feeding during forming of the gutters. There is no physical evidence that indicates that the paint adhesion was improper. To the contrary, all adhesion tests performed, either at the time of coating or subsequently, demonstrate excellent paint adhesion. Thus, any claim of improper paint adhesion is without scientific foundation.

This testimony forms the underpinning for Wismarq's theory of defense. In essence, this defense is that the coil was fit when it left Wismarq's control, that it was only after Holden and/or its customers improperly slit the coil that the debonding problems arose, and that Wismarq's product and its process of coating the coil therefore did not cause the paint failure.

Wismarq claims that Kenneth Minor, Holden's only remaining expert, offers no opinion as to what caused the paint failure here, but only that the rollforming equipment used to slit the coil was not the cause. Wismarq argues that it is thus entitled to summary judgment because neither Minor's testimony nor any other evidence, expert or otherwise, refutes Wismarq's theory of defense and establishes that its product and process of coating caused the paint failure here.

4

However, by foreclosing the rollforming process as a cause of the paint failure, Minor's testimony not only controverts Wismarq's poor slitting theory of defense – which depends upon a problem with the rollforming process due to the erratic feeding and excessive pressure allegedly caused by running poorly-slit coil – but also implicates the coil coating itself as the only other possible cause of the paint failure. In essence, Holden is attempting to prove that Wismarq's coil coating caused the paint failure by means of eliminating all other possible causes, and in particular the rollforming process employed by Holden and its customers. Holden is entitled to present such an indirect argument regarding causation. *See, e.g., Alvarez*, 749 N.E.2d at 23-24 ("With no expert testimony regarding the defects, plaintiff must present evidence of absences of abnormal use of the Rodeo and exclude any possible secondary causes of the alleged defects.").

This conclusion is bolstered by my observations in striking Holden's first proposed expert as to the cause of paint failure in this matter. In my June 25, 2003 order denying Holden's motion for reconsideration of my decision to bar the testimony of Dr. Kenneth Brown, I noted that "[w]ere Brown to be Holden's only proposed expert as to the cause of the paint failure in this matter, it might be said that a court should be more lenient in this matter" so as to prevent Holden's entire case from being "doomed." *Holden Metal & Aluminum Works v. Wismarq*, No. 00 C 0191, 2003 WL 21804394, at *2 (N.D. Ill. Jun. 25, 2003). Were I to now preclude Holden from offering Minor's testimony as evidence of causation, I would essentially "doom" its entire case. Holden should be allowed to have at least one expert address this critical issue of causation. Wismarq rightfully moved to strike the testimony of Brown, but it is now stuck with the testimony of Minor, which a jury must weigh against the testimony of Eager and Wismarq's other witnesses. However, in light of the untimely filing of an affidavit by Minor and Wismarq's

5

allegation that the affidavit contains new opinions that were not disclosed in his prior report, statement or deposition, I am granting leave to Wismarq to re-depose him if it should so choose on the limited issue of the alleged new opinions contained in the affidavit. But summary judgment on the basis of Holden's failure to establish causation is inappropriate.

Damages

As an alternative ground for summary judgment, Wismarq argues that the evidence of damages provided by Holden is insufficient and speculative. Proof that damages have been suffered must be made by credible evidence to a reasonable certainty and the amount of damages must be proven at least to a reasonable probability. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 703 F.Supp. 1313, 1320 (N.D. Ill. 1988), *aff'd*, 915 F.2d 316 (7th Cir. 1990).

In this case, Holden originally asserted a claim for damages in excess of $8 million, and the main support for this claim was the testimony of Michael Clinton, its accountant.[2] After Wismarq moved for summary judgment, Holden conceded that Clinton's deposition testimony reflected incomplete information and mistakes in the calculations, purportedly because of the admittedly preliminary nature of the calculations due to incomplete information at the time they were originally made. Moreover, since making these original calculations and claim for

---

[2] Specifically, Holden sought: (1) $693,195 as and for the price of the aluminum purchases by Holden which was defectively coated and thereby rendered worthless; (2) $7,452,000 as and for the cost of removing all of the gutters installed by either Holden or by Holden's wholesale customers, fabricating replacement gutters, and reinstalling them; (3) $16,057 for costs incurred by Holden in testing the defective coils; and (4) $47,456 as and for the cost to Holden of financing the purchase of the defective coils that were not used or sold by Holden because of their defective condition.

6

damages, Holden has taken actions in mitigation of its damages, which have lowered the amount which it now seeks from Wismarq. Accordingly, Holden now withdraws its claim for nearly $7.5 million for the cost of removing and reinstalling gutters, attempts to supplement Clinton's deposition testimony with an affidavit reflecting revised and recalculated damages, and seeks total damages in the amount of $481,475.[3]

Wismarq argues that it is too late for Holden to supplement Clinton's deposition testimony and revise its claim for damages, and thus moves to strike his affidavit. While Holden's actions are untimely, the essential question here is the amount of damages suffered by Holden, rather than whether such damages were suffered at all. Although Holden may have grossly miscalculated the damages it sought and although Clinton may be introducing new evidence for the first time at this late stage in the litigation, Wismarq has not challenged the central premise that Holden suffered at least some damages as a result of the paint failure. Moreover, the net effect of Clinton's affidavit and his alleged introduction of new evidence is to reduce, rather than increase Holden's claim for damages. For these reasons, I will consider Holden's most recent claims to damages and Clinton's affidavit in support, for purposes of this summary judgment motion. However, in light of Holden's untimely revision of its claim for

---

[3] Specifically, Holden now calculates its total loss as: (1) $583,521 as and for the price of the aluminum purchases by Holden which was defectively coated and thereby rendered worthless; (2) $11,351 in lost interest income would have been earned on the 275,041 pounds of unusable coil which Holden held for eight months while it was trying to resolve the problem with Wismarq and Morton; and (3) $15,396 for costs incurred by Holden in testing the defective coils. Holden has reduced its total loss by: (1) $125,329 from the sale of 267,967 pounds of scrap; and (2) $3,891 from the theft of 7,074 pounds of scrap from Wismarq's Franklin Park, Illinois facility. After deducting the freight charge for shipping the scrap to the United States and crediting Wismarq with a customs duty refund on the re-exported scrap, Holden now seeks a total of $481,475 in damages.

7

damages and its untimely submission of an affidavit for Clinton, I am granting leave to Wismarq to re-depose him if it should so choose. If Wismarq should so choose to re-depose Clinton and if, as a result of that deposition, Wismarq desires to file another motion for summary judgment on the grounds that Holden's damages evidence is still insufficient or speculative, it is further granted leave to do so. If Wismarq is successful on this second summary judgment motion (*i.e.*, if Holden's revised claim for damages is found to be insufficient or speculative), I will be inclined to award Wismarq reimbursement for the fees and costs incurred in re-deposing Clinton and preparing the additional summary judgment motion.

Finally, in light of Holden's revised damages calculations, Wismarq's claim that Holden's original claim for damages is insufficient or speculative is now moot. Therefore, summary judgment is not appropriate.

For the reasons above, Wismarq's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 and Motion to Strike the Affidavits of Kenneth Minor and Michael Clinton Filed by Plaintiff in Response to Wismarq's Motion for Summary Judgment Pursuant to FRCP 26 and 37(c) are DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 12 May 2004